# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
)
UNITED STATES OF AMERICA      )     Criminal No. 1:16-cr-10343-ADB
)
v.                         )
)
MICHAEL L. BABICH,         )
ALEC BURLAKOFF,           )
MICHAEL J. GURRY,          )
RICHARD M. SIMON,         )
SUNRISE LEE, and            )
JOSEPH A. ROWAN,          )
)
Defendants.       )
)
_____)

## DEFENDANTS' OPPOSITION TO GOVERNMENT'S MOTION FOR ALTERNATIVE VICTIM NOTIFICATION

The Government's Motion for Alternative Victim Notification (ECF No. 93) seeks to substitute press releases, various website entries, and "blast emails" in place of the procedures set forth in the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)-(c) (the "CVRA").  That is unwarranted here.  The former patients of physicians who, the Government alleges, conspired with the Defendants[1] in various ways—which patients the Government claims it must attempt to notify under § 3771—are not victims of *any* of the conduct the Government has charged against the Defendants, and therefore the Government may not properly notify them of anything under § 3771.  Nor has the Government *shown* that notifying either patients who were prescribed the relevant product or payers who reimbursed it is "impracticable" such that alternative notification procedures are appropriate.  *See* 18 U.S.C. § 3771(d)(2).  Finally, even if such patients or payers

---

[1] Each of the Defendants—Michael Babich, Alec Burlakoff, Michael Gurry, Richard Simon, Sunrise Lee, and Joseph Rowan—joins this opposition to the Government's motion.

qualify as potential victims and notifying them is impracticable, yet more press releases in this matter and "blast emails" of unspecified content to unspecified recipients improperly risk tainting the jury pool with adverse publicity and compromising the Defendants' right to a fair trial.  The Defendants therefore respectfully request that the Court deny the Government's motion.

**I.     Patients Of Alleged Co-Conspirator Physicians Are Not "Crime Victims" Of Any Offense With Which The Defendants Are Charged**

The Government's motion posits that, "***arguably***, any patient prescribed the product by a prescriber who was taking bribes from Defendants . . . [is a] victim[]," and that these victims are too numerous to notify through normal channels.  (Gov't Mot. at 2 (emphasis added).)  Leaving aside that the CVRA protects only those who are actually—not "arguably"—crime victims, only "a person directly and proximately harmed as a result of the commission of a Federal offense" qualifies as a "crime victim" requiring notification.  18 U.S.C. § 3771(e)(2).

To establish that a person is a potential "crime victim," the Government must show both: (1) "that a particular loss would not have occurred but for the conduct underlying the offense of conviction[;]" and (2) "that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)."  *United States v. Newell*, 658 F.3d 1, 31 (1st Cir. 2011) (internal quotations omitted);[2] *accord In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009) ("The [CVRA's] requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses.").  The former patients of

---

[2] Although *Newell* interpreted the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, its reasoning applies here. "The CVRA's definition of a crime victim is based on the federal restitution statutes."  The Honorable Jon Kyl et. al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 Lewis & Clark L. Rev. 581, 594 (2005).  Accordingly, courts consider authority from the restitution context when determining victim status under the CVRA because "[t]he standards are virtually identical."  *United States v. Sharp*, 463 F. Supp. 2d 556, 563 (E.D. Va. 2006); *see also United States v. Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 460-73 (D.N.J. 2009) (collecting cases).

alleged co-conspirator physicians meet neither requirement, so they are not "victims" under §
3771.

To be a "but-for" cause of the loss to a patient, the conduct charged against the
Defendants must have increased the out of pocket cost of medical services to that patient *beyond
what the patient already would have incurred.  See United States v. Cutter*, 313 F.3d 1, 6–7 (1st
Cir. 2002) (denying "victim" status where purported victim would have owed same amount to
bankruptcy estate regardless of defendant's bankruptcy fraud)[3]; *see also Newell*, 658 F.3d at 32
("Restitution should not be ordered in respect to a loss which would have occurred regardless of
the defendant's conduct.").  The Government has offered no theory about how any of the
Defendants' alleged conduct was a "but-for" cause of any out-of-pocket loss to any patient.  Nor
has the Government made any attempt to articulate a theory of how any such loss could bear a
sufficiently close relationship to the Defendants' alleged conduct so that the Defendants might
have proximately caused such a loss.

Instead, as to the purported patient victims, the Government relies solely on the theory
that the alleged conspiracy to bribe physicians deprived the patients of their *intangible* rights to
honest services from those physicians.  (Gov't Mot. at 2.)  But only those who suffer some
*tangible* harm flowing from the alleged theft of honest services constitute victims under the
CVRA.  *See In re Stewart*, 641 F.3d 1271, 1275 (11th Cir. 2011) (holding that, under the CVRA,
"a victim must demonstrate some injury—in this case monetary loss—caused by the offender's
crime."); *see also In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008).  The Government cites no
authority to the contrary, nor any authority which might support its position that mere loss of the
honest services of a fiduciary, standing alone, confers "crime victim" status under the CVRA.

---

[3] Like *Newell*, *Cutter* is a Mandatory Victim Restitution Act case, but its reasoning applies here.  *See* note 2, *supra*.

Moreover, the Government's theory that the loss of the intangible right to honest services, without more, gives rise to all the rights of "crime victims" under the CVRA would dilute the term "victim" to the point of meaninglessness.  Taken to its logical conclusion, the Government's theory would entitle the constituents of every public official accused of corruption to all of the CVRA's statutory rights in every proceeding against the official and each of his or her alleged co-conspirators.  That is not the law.  *See United States v. Silver*, Case No. 1:15-cr-00093-VEC, ECF No. 288 (S.D.N.Y. Apr. 29, 2016) (denying citizen opportunity to make victim impact statement at sentencing of elected official following official's conviction for honest services fraud because citizen "does not satisfy the definition of 'crime victim' under the Crime Victims' Rights Act."); *see also* U.S. Dep't of Justice, Information for Victims of Large Cases, https://www.justice.gov/largecases (last visited May 11, 2017) (none of 57 cases listed on the Justice Department website designed to provide "information for victims of large cases" involves allegations of honest services fraud).

Finally, several of the alleged co-conspirator physicians themselves have faced—or are facing—prosecution in federal courts around the country.  The Government has not filed a similar motion to notify patients of their potential victim status in *any* of those proceedings, nor has it attempted to explain why it was deemed unnecessary to do so in those cases but necessary to request exceptional victim notification procedures here.[4]  If the patients of those physicians are not entitled to notification of their status as potential victims in the cases against the physicians themselves, then *a fortiori* they cannot be considered potential victims of the Defendants here.

---

[4] Of the ten practitioners identified in the Government's automatic discovery letter and referred to as Practitioner No. 1 through Practitioner No. 10 in the Indictment, six have faced or are facing federal criminal charges.  A review of the dockets of the criminal actions against those six practitioners reveals that the Government has filed a motion seeking leave to use alternative victim notification procedures in *none* of those matters.

It follows that the Government has failed to establish that any of the patients of the alleged co-conspirator physicians are potential "crime victims" within the meaning of § 3771. The Government's motion should therefore be denied as to such patients.

## II.    The Government Has Not Shown That It Is "Impracticable" To Notify Patients Or Payers Through Normal Channels

Even if the patients of the alleged co-conspirator physicians could be considered "crime victims" within the meaning of 18 U.S.C. § 3771 (and, as discussed above, they cannot), the Government has presented no *evidence* which would permit the Court to "*find*[] that the number of [such patients] makes it impracticable to accord all of the crime victims the rights described in subsection (a)." *See* 18 U.S.C. § 3771(d)(2) (emphasis added).  Nor has the Government presented any evidence which might support such a similar finding with respect to payers who were allegedly defrauded into reimbursing prescriptions.  The Government's motion fails on this independent basis as well.

The Government's motion relies entirely on conclusory *ipse dixit*, stating, without citation to any evidence, that, "[t]he United States does not know precisely how many of these patients and entities would qualify as victims if the government prevailed at trial and, even if the government could calculate a figure at this point, it would be impossible to give them all individual notice under 18 U.S.C. § 3771." (Gov't Mot. at 2.)  It is axiomatic that a judicial finding may not rest on such a statement alone.

Moreover, the Government need not resort to exceptional victim notification procedures here because it plainly has access to all of the relevant records that would permit it to identify every patient ever prescribed the relevant product.  As a preliminary matter, the payment of speaker fees to practicing physicians is an inherently legal activity, *see*, *e.g.*, *United States ex rel. Booker v. Pfizer*, 188 F. Supp. 3d 122, 133-34 (D. Mass. 2016), and there is no presumption that

any patient prescribed the product was in any way victimized.  Moreover, the vast majority of prescribers of the product are neither charged nor identified as co-conspirators.  The government has already identified the subset of patients—those who were prescribed the product by one of the co-conspirator physicians—that it contends are victims, and this small subset of patients is already known (or reasonably knowable) to the government.

As alleged in the indictment, the product falls under the FDA's Transmucosal Immediate Release Fentanyl risk evaluation and mitigation strategy ("TIRF REMS") program.  (Indictment ¶¶ 17-18.)  Under the TIRF REMS program, every patient prescribed the relevant product had to sign and submit a Patient-Prescriber Agreement Form.  *See* Patient Prescriber Agreement Form, https://www.tirfremsaccess.com/TirfUI/rems/pdf/ppaf-form.pdf (last visited May 11, 2017).  The prescribing physician must sign the form as well.  *Id.*  The Government therefore has within easy reach all the documents necessary to identify and individually contact every patient who received a prescription from an alleged co-conspirator physician.[5]

Similarly, the Government has access to the identity of every insurer or other payer who reimbursed a prescription which potentially gives rise to "crime victim" status.  Only pharmacies enrolled in the TIRF REMS program may dispense the relevant product.  *See* TIRF REMS Access, Resources for Pharmacists, https://www.tirfremsaccess.com/TirfUI/rems/pharmaciesResources.action (last visited May 11, 2017).  And each of those pharmacies has records of the payer who reimbursed its portion of the relevant prescription.

---

[5] The fact that these documents may be voluminous is of no moment.  Nothing in § 3771 suggests that the Government may evade its notice obligations simply because reviewing the relevant documents will take time.

The Government therefore has practicable means at its disposal to identify every patient or payer that it claims is a potential victim without resorting to unnecessary and prejudicial publicity.  The Government's motion should be denied on this independent basis as well.

### III.   The Government's Proposed Alternative Procedure Risks Tainting The Jury Pool And Depriving The Defendants Of Their Right To A Fair Trial

Finally, even if the Government could show that patients could be "crime victims" within the meaning of 18 U.S.C. § 3771 or that notifying either patients or payers would be impracticable (and, as discussed above, the Government has shown neither), the Government's proposal to notify potential victims by website entries, additional press releases, and "blast emails" risks substantial pretrial prejudice to the Defendants.  It should be denied on this basis to protect the Defendants' constitutional right to a fair trial.

"The theory of our [trial] system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."  *Skilling v. United States*, 561 U.S. 358, 378 (2010) (quoting *Patterson v. Colorado ex rel. Attorney General of Colo.*, 205 U.S. 454, 462 (1907) (Holmes, J.)); *see also id.* at 438 (Sotomayor, J., concurring in part and dissenting in part) ("Community passions, *often inflamed by adverse pretrial publicity*, can call the integrity of a trial into doubt.") (emphasis added).

First, the proposed press releases would create real, unnecessary pretrial prejudice to the Defendants.  Any press release the Government issues will repeat the Government's theory— articulated in the press release announcing the Defendants' indictment—that the Defendants "led a nationwide conspiracy to bribe medical practitioners to unnecessarily prescribe a fentanyl-

based pain medication and defraud healthcare insurers."[6]  Indeed, the websites the Government

points to in its motion *already* repeat the Government's theory without any attempt to

contextualize the evidence.  *See* U.S. Attorney's Office, District of Massachusetts, United States

v. Michael Babich, Alec Burlakoff, Richard Simon, Sunrise Lee, Joseph Rowan, and Michael

Gurry, https://www.justice.gov/usao-ma/united-states-v-michael-babich-alec-burlakoff-richard-

simon-sunrise-lee-joseph-rowan-and (last visited May 11, 2017) (stating that the Defendants

were charged with a "nationwide conspiracy to bribe medical practitioners"); Federal Bureau of

Investigation, Seeking Victims in the Subsys Medication Case,

https://www.fbi.gov/resources/victim-assistance/seeking-victim-information/seeking-victims-in-

the-subsys-medication-case (last visited May 11, 2017) (accusing the Defendants of having "led

a nationwide conspiracy to bribe medical practitioners in various states").  Moreover, like the

indictment and the press release announcing it, the Government's proposed additional press

releases will also likely quote at length from email correspondence and other evidence that the

Government plainly intends to offer at trial with no opportunity for the Defendants to rebut or

contextualize that evidence.  The resulting risk to the Defendants' right to a fair trial is

intolerably high.

      Second, the Government's statement that it "may try to develop a system in which it can

send 'blast emails' to those alleged victims for whom it has email addresses," (Gov't Mot. at 3),

is so vague and speculative that the Defendants cannot meaningfully respond to it at this stage.

To the extent that, as with the Government's proposed press releases, the proposed "blast emails"

to unspecified persons will recite the Government's still unproven theories and quote at length

---

[6] Press Release, U.S. Dep't of Justice, District of Massachusetts, "Pharmaceutical Executives Charged in Racketeering Scheme" (Dec. 8, 2016), *available at* https://www.justice.gov/usao-ma/pr/pharmaceutical-executives-charged-racketeering-scheme.

from likely trial evidence, the Defendants respectfully submit that such "blast emails" are inappropriate and likely to taint the jury pool.

Finally, even if the Court were to conclude that a press release is appropriate here, the Defendants respectfully submit that any such release should not recite the still-unproven allegations against the Defendants in the pleadings.  Judges in this District have imposed similar restrictions before.  *See United States v. Merrill*, No. CRIM. 14-40028-TSH, 2014 WL 6387368, at *2 (D. Mass. Nov. 14, 2014) ("[Press] releases and/or notices shall avoid reciting allegations contained in the pleadings except as is necessary to comply with the notification obligations.").

At bottom, where the Government has failed to show that the patients of the alleged co-conspirator physicians are potential victims of the crimes charged against the Defendants, and where the Government has failed to show that it is truly impracticable to notify either such patients or any payers who may be potential victims (especially given the existence of the Government's initial press release and the Government's various websites regarding this case), the Court should be especially critical of any proposed notice that will endanger the Defendants' constitutional right to an untainted jury.

IV.     **Conclusion**

For all of the foregoing reasons, the Defendants respectfully request that the Court deny

the Government's Motion for Alternative Victim Notification (ECF No. 93).

By: /s/ Wick Sollers
Joseph Sedwick Sollers, III
wsollers@kslaw.com
D.C. Bar No. 370886
Mark Jensen
mjensen@kslaw.com
D.C. Bar No. 463162
King & Spalding LLP
1700 Pennsylvania Ave. NW
Washington, D.C.  20006
Telephone: (202) 737-0500

William H. Kettlewell (BBO# 270320)
wkettlewell@collorallp.com
Alexandra Watson (BBO# 676145)
awatson@collorallp.com
Collora LLP
100 High Street
Boston, MA 02110
Telephone: (617) 371-1037

Attorneys for Michael L. Babich

By: /s/ George W. Vien
George W. Vien (BBO# 547741)
gwv@dcglaw.com
Peter E. Gelhaar (BBO# 188310)
peg@dcglaw.com
Joshua N. Ruby (BBO# 679113)
jnr@dcglaw.com
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Telephone: (617) 720-2880


Attorneys for Alec Burlakoff

By: /s/ Lee Stein
Lee Stein
lee@mitchellsteincarey.com
AZ Bar No. 012368
Mitchell Stein Carey PC
One Renaissance Square
2 North Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 358-0291

Peter E. Ball (BBO# 546031)
peb@fitchlp.com
Fitch Law Partners LLP
One Beacon Street, 16th Floor
Boston, MA 02108
Telephone: (617) 542-5542

Attorneys for Sunrise Lee

By:  /s/ Steven A. Tyrrell
Steven A. Tyrrell
steven.tyrrell@weil.com
D.C. Bar. No. 998795
Eileen Citron
eileen.citron@weil.com
D.C. Bar No. 995117
Vanshika Vij
vanshika.vij@weil.com
D.C. Bar No. 1029822
Weil, Gotshal & Manges LLP
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000

Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
100 Federal St. #34
Boston, MA 02110
Telephone: (617) 772-8365


Attorneys for Richard M. Simon

By:  /s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
617-939-9310

Attorneys for Joseph Rowan


By:  /s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@demeollp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: 617-263-2600

Attorneys for Michael J. Gurry



Dated:  May 11, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 11, 2017.

/s/ *Joshua N. Ruby*
Joshua N. Ruby