UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>MICHAEL L. BABICH et al.,<br><br>Defendants. | Criminal No. 16-CR-10343-ADB<br><br>**REDACTED VERSION** |

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW TO EXCLUDE THE TESTIMONY OF JOSEPH RANNAZZISI**

Three months after the government's expert disclosure deadline—and just two months prior to the start of the trial—the government disclosed Mr. Rannazzisi, an expert witness who has publicly raged against opioid company executives on national television and called for "lock[ing] up, arrest[ing] one of these corporate officers" so that "everyone sits up and takes notice" because "three-piece suit guys don't do well in prison,"[1] to testify about the regulatory scheme governing the DEA's manufacturing quotas for controlled substances. When challenged about the disclosure, the government claimed that it intends to call Mr. Rannazzisi as a fact witness during its case-in-chief, and would save any expert testimony for rebuttal. But this claim is belied by the government's own disclosure—and common sense. Mr. Rannazzisi's proffered testimony is quintessential expert testimony, which was disclosed to Defendants in an untimely fashion. That alone should warrant Mr. Rannazzisi's exclusion from the government's case-in-chief.

---

[1] Mr. Rannazzisi made these statements on CBS's *60 Minutes*. *See* "The Whistleblower, Redemption" *available at* https://www.cbs.com/shows/60_minutes/video/sAGgOZUmuaVmCJVExk81_DDAH9TRixdO/the-whistleblower-redemption/ (Oct. 15, 2017).

1

Mr. Rannazzisi's proffered testimony is also irrelevant. The government wants Mr. Rannazzisi to testify at length about the "overall regulatory scheme" that governs "the method by which the DEA establishes the amount of quota for each drug and each drug manufacturer," as well as the "duties and obligations placed upon DEA registrants" under that scheme. But the word "quota" is nowhere to be found in the 75 paragraphs of the Second Superseding Indictment, or in the 259 paragraphs of the First Superseding Indictment. That makes sense, because Insys was not subject to the regulatory scheme governing quotas and never requested any quotas for fentanyl from the DEA.[2] That task fell to DPT Lakewood, a contract manufacturer, which requested a combined quota for all of the companies that it serviced, including Insys.

Worse yet, allowing Mr. Rannazzisi to testify would unfairly prejudice Defendants. Mr. Rannazzisi has a prominent public presence, which he has used to rail against opioid manufacturers and distributors. His views are based on his general dislike of, and bias against, opioid executives—not any first-hand knowledge about *these* Defendants. The turn to public agitation to "lock them up" by commentators like Mr. Rannazzisi is bad enough in American politics; the same commentators should not be permitted to double their damage by testifying in support of the "lock up" effort at trial. A witness who is so compromised in his personal desire to see corporate defendants prosecuted for the opioid crisis does not belong on the stand in this case.

Accordingly, Defendants respectfully request that the Court preclude Joseph Rannazzisi from testifying at trial in any capacity.

---

[2] The government has already timely disclosed another DEA expert—Todd Prough—to testify about regulatory matters that are actually at issue in this case. Defendants are not seeking to exclude Mr. Prough. *See* Ltr. from N. Yeager to Defense Counsel (Aug. 1, 2018) (Ex. 1) at 2.

**BACKGROUND**

On November 11, 2018, the government notified Defendants of an additional "expert disclosure[]" it intended to make: Joseph Rannazzisi. Ltr. from N. Yeager to Defense Counsel (Nov. 11, 2018) (Ex. 2). The disclosure, in full, states:

> Mr. Rannazzisi will testify regarding the DEA's implementation of the provisions of 21 USC § 826, including 21 CFR § 1303. His testimony will include an overview of the method by which the DEA establishes the amount of quota for each drug and each manufacturer. It is anticipated that Mr. Rannazzisi will testify that the substance quotas are established by scientists employed by the DEA who rely in part upon the total number of prescriptions written for each particular drug. Further, it is anticipated that Mr. Rannazzisi will testify that the controlled substance quota process is a regulatory measure that is part of an overall regulatory scheme to protect the closed system of distribution. Further, that the overall scheme includes, but is not limited to, drug quotas, as well as the duties and obligations placed upon DEA registrants, including distributors, practitioners, and pharmacies. It is also anticipated that Mr. Rannazzisi will testify that (a) the controlled substance quotas will decrease naturally as the number of prescriptions decrease within a basic class; (b) the number of prescriptions will decrease as DEA registrants comply with the controls and regulatory requirements placed upon them by the C.S.A. and its regulatory framework; and (c) that arbitrarily decreasing drug quotas, without enforcing the C.S.A.'s requirements on DEA registrants, risks creating a drug shortage for patients with legitimate need (e.g. the supply of the drug will decrease while the number of patients and illicit drug seekers will stay the same or increase, forcing competition for a smaller amount of pharmaceuticals).
>
> Last, it is anticipated that Mr. Rannazzisi will provide an overview of the C.S.A.'s suspicious activity reporting requirements. Further, it is anticipated that Mr. Rannazzisi will testify regarding the DEA's enforcement of the reporting requirements of 21 C.F.R. § 1301.74.

*Id.* at 2.

Concerned by this disclosure, which came more than three months after the deadline established in the Amended Scheduling Order for expert disclosures, Defendants sought clarification. Ltr. from Defense Counsel to N. Yeager (Nov. 14, 2018) (Ex. 3). In response, the government claimed that Mr. Rannazzisi will not be called as an expert in the government's case-in-chief, but instead was disclosed as a potential rebuttal expert. E-mail from N. Yeager to Defense

Counsel (Nov. 17, 2018) (Ex. 4). But the word "rebuttal" did not appear once in the disclosure, nor did the government identify who or what Mr. Rannazzisi would be rebutting. (Ex. 2.) Moreover, in response to Defendants' inquiry, the government for the first time indicated that it "reserve[d] the right to call [Mr. Rannazzisi] in [the government's] case in chief as a fact witness." (Ex. 4.)

Joseph Rannazzisi's history with the DEA is long and turbulent. He retired from the DEA in October 2015, after being pushed out of his role as head of the diversion control unit.[3] By many accounts, his departure was the result of his obstinance and refusal to work with opioid manufacturers and distributors.[4] Since then, he has made it his mission to publicly rail against opioid manufacturers and distributors, while shifting any blame away from the DEA's diversion efforts (or lack thereof) under his leadership. This has included appearing as a "whistleblower" in an episode of *60 Minutes*. *See* "The Whistleblower, Redemption" *available at* https://www.cbs.com/shows/60_minutes/video/sAGgOZUmuaVmCJVExk81_DDAH9TRixdO/the-whistleblower-redemption/ (Oct. 15, 2017). In the course of this interview, Mr. Rannazzisi demonstrated that he could never be an objective expert in an opioid matter given his "smoldering rage." *Id.* According to Mr. Rannazzisi, the opioid crisis was fueled by "drug dealers in lab coats."

---

[3] Allan MacDonell, *The DEA Has a Massive Pill Problem, and Now It's the World's Problem Too*, Kindland, Dec. 23, 2016, *available at* https://www.thekindland.com/policy/the-dea-has-a-massive-pill-problem-and-now-its-2471 ("In 2015 . . . Rannazzisi was removed from the DEA's Office of Diversion Control. He resigned soon after.").

[4] *Id.* ("Accounts agree that Rannazzisi consistently opposed a soft, collaborative approach to enforcing violations of established opioid control policy."); *see also* Scott Higham & Lenny Bernstein, *Amid Opioid Crisis, 2016 Law Derails DEA's Enforcement Abilities*, St. Paul Pioneer Press (Oct. 16, 2017), *available at* https://www.twincities.com/2017/10/16/amid-opioid-crisis-2016-law-derails-dea/ (quoting former Deputy Attorney General James M. Cole regarding Mr. Rannazzisi's refusal to even meet with Cardinal Health, a drug distributor, despite the fact that "hearing what Cardinal had to say could inform DEA of facts they may not have known").

*Id.* He also made frequent references to people dying from opioid use, in a clear attempt to stoke fear and anger that has no bearing on this case. *Id.*

Mr. Rannazzisi's rage at opioid companies led him to call for "lock[ing] up, arrest[ing] one of these corporate officers" so that "everyone sits up and takes notice" because "three-piece suit guys don't do well in prison." *Id.* His opinions may drive television ratings, but they have no place in a judicial proceeding to decide Defendants' guilt or innocence. And it is unreasonable to expect a witness as biased against opioid executives as Mr. Rannazzisi to set such biases aside and offer dispassionate, fact-based testimony.

## ARGUMENT

Mr. Rannazzisi's expert disclosure is untimely and irrelevant, unfairly prejudicial, and likely to mislead and confuse the jury. *See* Fed. R. Evid. 402, 403. Accordingly, his testimony should be excluded.

**I. MR. RANNAZZISI'S TESTIMONY IS IRRELEVANT.**

Mr. Rannazzisi has been disclosed as an expert to discuss DEA manufacturing quotas.[5] But there is *no* allegation of misconduct regarding quotas in this case. The word "quota" is nowhere to be found in the First or Second Superseding Indictments. And the government has made no allegations that Insys failed to properly request annual quotas from the DEA, or abide by those quotas once granted.

---

[5] A brief portion of the government's disclosure for Mr. Rannazzisi deals with suspicious order monitoring. This should nevertheless be excluded under Rule 403, due to the unfair prejudice to Defendants should he be allowed to testify. *See infra* Sec. II. Additionally, the government has already timely disclosed DEA Agent Todd Prough to cover the same subject. (*See* Ex. 1 (disclosing Agent Prough as an expert on "the duties and responsibilities of D.E.A. registrants when handling controlled substances, including the need to register with the D.E.A., [and] the need to detect and report suspicious activity").)

Nor could the government allege anything of the sort. During the entirety of the alleged conspiracy period, Insys used a contract manufacturer, DPT Lakewood, to manufacture Subsys.[6] Because Insys never actually touched the fentanyl that was used in manufacturing, the company was not required to register with the DEA as a manufacturer or distributor. *See* 21 C.F.R. § 1301.11 (outlining who is required to register with the DEA). This also means that Insys never requested an annual quota from the DEA. Instead, Insys submitted a quota request to DPT Lakewood, which then compiled the requests it received from all its clients and requested a combined annual quota for *all* the fentanyl it would need in manufacturing from the DEA.[7] *See, e.g.*, USAO-MA-1314261 (Ex. 6 at 2) (sample quota request from DPT Lakewood). DPT Lakewood properly filed all quota paperwork with the DEA, and there is no allegation by the government that it ever exceeded the quotas it was granted.

---

[6]  DPT Lakewood, which now goes by the name Renaissance Pharmaceuticals, is a contract manufacturing organization (CMO). USAO-MA-0223208 (Ex. 5 at 1). The company has operated for decades and has more than 500 employees at its Lakewood, New Jersey plant. Renaissance, *About Renaissance*, https://www.renpharm.com/about (last visited Dec. 3, 2018); Renaissance, *Renaissance Facility*, https://www.renpharm.com/projects (last visited Dec. 3, 2018). Numerous pharmaceutical companies employed DPT Lakewood during the alleged conspiracy period to manufacture fentanyl products, including ▮▮▮▮▮▮▮▮▮▮. *See* USAO-MA-1314260-79 (Ex. 6) ▮▮▮▮. CMOs have "become an inevitable part of drug manufacturing." Zara Kassam, *Contract Manufacturing Markets Are Being Uplifted by Pharma Companies*, European Pharmaceutical Review (Sept. 19, 2018), *available at* https://www.europeanpharmaceuticalreview.com/news/77240/pharma-outsourcing-markets/; *see also Global Contract Manufacturing Companies*, Pharma Live (Nov. 2011) at 3, *available at* http://pharmalive.com/wp-content/uploads/2015/02/CMO_FULL_1111.pdf ("Pharmaceutical companies are increasingly relying on contract manufacturing, research, and packaging services to fulfill many basic needs and specialized competencies.").

[7]  Along with the combined quota request, DPT Lakewood submitted, as supporting documentation, the individual quota requests for all of its clients, including Insys. *See, e.g.*, USAO-MA-1314275 (Ex. 6 at 16). Therefore, even though Insys wasn't directly submitting a quota request to the DEA, there was always transparency into the amount of fentanyl that Insys was requesting to produce Subsys.

The government has alleged that Defendants joined a conspiracy related to the *prescribing* and *distribution* of Subsys. *See generally* Second Superseding Indictment. But quotas are relevant only to how much product can be *manufactured*, not how it is *distributed* or *prescribed*. *See* 21 C.F.R. § 1303. Simply put, Mr. Rannazzisi's proffered testimony about quotas has no probative value in this case and should be excluded. *See United States v. Bulger*, 816 F.3d 137, 155 (1st Cir. 2016) (affirming district court's decision to preclude witness from testifying because testimony would have been irrelevant and highly prejudicial). And allowing any testimony on the subject of DEA quotas would distract the jury from the actual issues in this case. *See Rockwell Automation, Inc. v. Advanced Georservices Corp.*, No. Civ. A. 03-3895, 2004 WL 3142448, at *1 n.1 (E.D. Pa. Dec. 21, 2004) ("[I]f the admission of evidence will lead to the litigation of collateral issues that may distract the jury, the Court may exclude the evidence.") (citing *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992)).

**II.   ALLOWING MR. RANNAZZISI TO TESTIFY WOULD UNFAIRLY PREJUDICE DEFENDANTS.**

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir. 1987) (observing that the "district court has wide discretion in steadying the Rule 403 seesaw"). Even where expert testimony is otherwise admissible, it must still be excluded if its probative value is outweighed by its potential to cause unfair prejudice. Fed. R. Evid. 403; *see also United States v. Schneider*, 111 F.3d 197, 203 (1st Cir. 1997) ("[T]he district court was free to exclude . . . evidence on the ground that its capacity to mislead the jury substantially outweighed its limited relevance."). Unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly,

7

though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 Advisory Committee's Notes); *see also United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000) ("Usually, courts use the term 'unfair prejudice' for evidence that invites the jury to render a verdict on an improper emotional basis.").

    **A.    Mr. Rannazzisi's Disclosed Testimony Constitutes Expert—Not Fact—Testimony, And Is Untimely and Prejudicial.**

To try to get around its untimely disclosure, the government has recast Mr. Rannazzisi as a fact witness. This contradicts the government's own initial disclosure and ignores the practical consequences of having him testify as a fact witness.

Mr. Rannazzisi was a DEA employee during the alleged conspiracy period and signed the quota approval letters issued to DPT Lakewood during that time. But testimony on that topic alone would be nonsensical without more for context, such as the method of calculating quotas, the fact that "the controlled substance quota process is a regulatory measure that is part of an overall regulatory scheme to protect the closed system of distribution," and an explanation that "the overall scheme includes, but is not limited to, drug quotas, as well as the duties and obligations placed upon DEA registrants, including distributors, practitioners, and pharmacies." These are the topics included in Mr. Rannazzisi's expert disclosure. (Ex. 2.)

*United States v. Vega*, 813 F.3d 386 (1st Cir. 2016), is instructive on this point. There, the government sought to have two federal agents testify as lay witnesses regarding Medicare regulation. *Id.* at 395. The Court held that admitting such testimony was error because it required a technical understanding of Medicare laws and regulations beyond the bound of "personal knowledge," into the forbidden territory of "lending the jury their knowledge of Medicare law to provide definitive commentary on the matter." *Id.* The agents "could form their opinions only by understanding technical Medicare laws and regulations." *Id.* The fact that the agents "had

knowledge of Medicare law through their occupations [did] not make it 'personal knowledge' qualifying as lay expertise." *Id.* The government seeks to have Mr. Rannazzisi do precisely what the First Circuit deemed improper in *Vega*: interpret DEA regulations and "provide definitive commentary on the matter," without complying with the rules for appropriate expert disclosure.

The distinction between fact and expert is an important one. Given Mr. Rannazzisi's background at the DEA, the jury is likely to treat his testimony as expert testimony even if he technically is labeled a fact witness. *See United States v. Hines,* 55 F. Supp. 2d 62, 64 (D. Mass. 1999) ("[A] certain patina attaches to an expert's testimony unlike any other witness; this is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve."); *United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994) ("By appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged."). This undue influence is further compounded by the fact that the government also claims that it wants Mr. Rannazzisi to testify as an expert witness during its rebuttal case. The jury will likely be confused about which opinions were expert opinions and which were technically fact opinions. As a result, the jury is likely to treat the entirety of his testimony as expert testimony—giving it undue weight.

Expert disclosure deadlines are not a mere formality that the government can dispose of as it pleases. "'The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent' and to prevent parties from seeking the 'unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion.'" *Roach v. CUNA Mut. Ins. Co.*, 385 F. App'x 2, 5-6 (1st Cir. 2010) (quoting *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004)). It is for this reason that the Court here long ago ordered the government to make its expert disclosures on August 1, 2018. (Dkt. No. 279). The government's

belated attempt to circumvent this deadline by suggesting Mr. Rannazzisi's testimony could be split into fact testimony, which it would introduce in its case-in-chief, and expert testimony, which it would save for its rebuttal case, should not be countenanced. *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (A trial court has "broad discretion to exclude untimely disclosed expert witness testimony.").

### B. Mr. Rannazzisi Is A Deeply Biased Advocate, Not An Objective Expert.

Mr. Rannazzisi was pushed out of the DEA in 2015 due to an inability to work collaboratively with the industry he was attempting to regulate. He has openly advocated for opioid company executives to be "lock[ed] up, arrest[ed]" so that "everyone sits up and takes notice." *Id.* This is not even veiled prejudice—it is a badge that Mr. Rannazzisi has worn loud and proud. This attitude will infect any opinion that he offers in this case, which the government has brought against the very class of individuals against whom Mr. Rannazzisi is biased. Some courts have concluded "that 'where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading.'" *United States v. Kelley*, 6 F. Supp. 2d 1168, 1183 (D. Kan. 1998) (quoting *Conde v. Velsicol Chemical Corp.,* 804 F. Supp. 972, 984 (S.D. Ohio 1992)). At the very least, under such circumstances, it is appropriate for a court to look more closely at whether the expert's testimony should be admitted. *Id.* (excluding expert after a close look); *see also In re Air Crash Disaster at Detroit Metro. Airport,* 737 F. Supp. 427, 430 (E.D. Mich. 1989) (same), *aff'd,* 917 F.2d 24 (6th Cir.1990).

Mr. Rannazzisi's bias in this case goes far beyond the typical. When combined with the irrelevance of his proffered testimony, it is clear that the government has no permissible basis for putting him on the witness stand.

## CONCLUSION

For the foregoing reasons, the Court should exclude the testimony of Joseph Rannazzisi in full. In the alternative, the Court should at least limit Mr. Rannazzisi to serve as a true rebuttal witness, who may only testify if Defendants' case-in-chief opens the door to his proffered testimony.

Dated:  December 5, 2018

/s/ Joseph Sedwick Sollers, III
Joseph Sedwick Sollers, III
(admitted *pro hac vice*)
wsollers@kslaw.com
Mark Jensen (admitted *pro hac vice*)
mjensen@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 737-0500

William H. Kettlewell (BBO# 270320)
wkettlewell@collorallp.com
Hogan Lovells
Boston, MA 02110
Telephone: (617) 371-1005

*Attorneys for Michael Babich*

Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7213

*Attorneys for Richard Simon*

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

*Attorneys for Joseph Rowan*

Respectfully submitted,

/s/ Beth A. Wilkinson
Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta Stojilkovic
kstojilkovic@wilkinsonwalsh.com
Wilkinson Walsh + Eskovitz LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
Prudential Tower 800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

*Attorneys for Dr. John Kapoor*

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@demeollp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: (617) 263-2600

*Attorneys for Michael Gurry*

/s/ Peter Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466
Telephone: (617) 723-1980

 *Attorney for Sunrise Lee*

## **LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for Dr. Kapoor have in good faith conferred with counsel for the government to resolve or narrow the issues presented by this motion, and that the disputed issues remain unresolved.

/s/ Beth A. Wilkinson
Beth A. Wilkinson
Counsel for Dr. John Kapoor

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on all counsel of record through the ECF system.

/s/ Beth A. Wilkinson
Beth A. Wilkinson
Counsel for Dr. John Kapoor