UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL NO. 16-10343-ADB |
| ) | |
| v. ) | |
| ) | |
| MICHAEL L. BABICH, ET. Al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**GOVERNMENT'S MOTION TO EXCLUDE OR, ALTERNATIVELY, TO LIMIT
TESTIMONY AND EVIDENCE FROM DEFENSE EXPERTS**

The United States moves to exclude the testimony of nine defense experts. As grounds, the United States asserts: (1) the Defendants' expert disclosures fail to comply with the requirements of Fed. R. Crim. P. 16 (b)(1)(C); and (2) several "topics" of testimony disclosed by the Defendants are clearly not admissible at trial pursuant to Fed. R. Evid. 401, 402, and 403.

**BACKGROUND**

On February 2, 2018, the parties filed a Proposed Joint Scheduling Order in which the Defendants agreed to provide "the government all disclosures required under Federal Rule of Criminal Procedure 16 for any expert witness they intend to call in an affirmative capacity at trial." Dkt. # 278 at ¶ 7. On February 5, 2018, Magistrate Judge Boal entered an Amended Scheduling Order, which adopted the joint proposal. Dkt. # 279. In a letter, dated October 1, 2018, counsel for Defendant John Kapoor disclosed nine experts. See Letter of Attorney Beth Wilkinson, October 1, 2018, attached as Exhibit 1.

The Defendants disclosure fails to comply with the basic requirements of Rule 16, leaving the government (a) to guess about the opinions of their proposed experts, and (b) unable to challenge the reliability of proposed statistical and quantitative analyses. Further, the

Defendants assert that several of their experts intend to discuss topics that are plainly barred by the rules of evidence, including (a) testimony of legal experts regarding the requirements of the law, and (b) testimony of industry experts, regarding generic industry practice or custom, unconnected to the Defendants state of mind.

*The Absence of Opinion Summaries*

The Defendants' letter gave notice of three "Medical Experts" (Wilfred J. Hynes, MD, William S. Rosenberg, MD, and Lisa J. Stearns, MD), two "DEA Experts" (Attorney Jodi L. Avergun and Attorney Larry P. Cote), and four "Other Experts" (Heather Bates, Todd Edgar, Pharm. D., Jesse M. Fried, and John MacDonald).  With each of the nine expert disclosures, the Defendants enumerated a list of "topics" about which each of respective witness "may" testify. Depending upon the expert, the number of topics of testimony varies, but can include as many as eight to nine different topics for each of the experts.  Within each list, one or two of the enumerated topics include a clause that weakly describes an expert opinion.  Most of the topics, however, completely omit any description of the witness's opinion.

*The Absence of Statistical and Quantitative Analyses*

The Defendants disclose that two of their witness will testify about data.  The Defendants disclose that Heather Bates testimony "may include quantitative and statistical analyses of" four separate topics.  Exhibit 1 at 5-6.  Likewise, the Defendants have disclosed that John MacDonald, "may also present, summarize, and analyze sales and prescription data" regarding four topics. Further, that his testimony "may include qualitative and quantitative analyses of … statistical relationship[s]" covering four topics.  Exhibit 1 at 7-8.  None of these disclosures are accompanied by analyses or by a summary that describes the witness's opinions.

*Legal Instruction*

The Defendants assert that they will call three different attorneys to testify regarding their view of the law.  The Defendants have disclosed that Jodi L. Avergun, a partner at Cadwalader, Wickersham & Taft LLP, will be called to testify regarding topics such as the "the responsibilities of controlled-substance registrants" and how third party logistics provider shipping arrangements, "do or do not impact registrants' reporting requirements to the DEA."  Exhibit 1 at 4-5.  Similarly, Larry P. Cote, a partner at Quarles & Bradley LLP, will testify on topics such as "the responsibilities of controlled-substance registrants" and "a pharmaceutical manufacturer's regulatory obligations under the CSA relating to due diligence of pharmacies and physicians."  Exhibit 1 at 5.  Last, the Defendants intend to call Jesse M. Fried, Dane Professor of Law at Harvard Law School, to testify regarding "the responsibilities of members of the boards of directors of public companies."  Exhibit 1 at 7.  None of these disclosures are accompanied by a summary that describes the witness's opinions.

*Generic Industry Custom and Practice*

The Defendants assert that several of their witnesses will testify regarding industry practices and customs.  The Defendants have disclosed that Attorney Avergun will testify regarding "suspicious order monitoring programs and customer diligence customary in the industry" and "the use of third-party logistics providers in that process, including custom and practice in the industry."  Exhibit 1 at 4.  Attorney Avergun will also "opine that it was customary in the industry at and prior to the indictment in this case for pharmaceutical companies to rely upon the diligence that their wholesalers, logistics providers, and distributors perform on pharmacies and other downstream registrants."  Exhibit 1 at 4.  Likewise, Attorney Cote will testify regarding "suspicious order monitoring programs and customer diligence customary in the

industry." Exhibit 1 at 5. The Defendants have disclosed that the testimony of Todd Edgar, a pharmacist, will include, "custom and practice in the industry regarding pharmaceutical companies' use of internal and/or external reimbursement services hubs" and "custom and practice in the industry regarding pharmaceutical companies' use of reimbursement and coverage data to inform the company's payor strategies." Exhibit 1 at 7. Last, Jesse Fried will testify about industry "incentives" of board members and other corporate employees and "issues related to compliance, including custom and practice relating to how boards of directors typically respond to a government subpoena or government investigation." Exhibit 1 at 7. Mr. Fried will also testify regarding executive and staff compensation structures of Insys, "including whether they are consistent with custom and practice for companies of Insys's size and trajectory." Exhibit 1 at 7. None of these disclosures are accompanied by a summary that describes the witness's opinions. Nor do any of these disclosure assert that the Defendants were aware of the respective industry practice or custom.

*Government Disclosures*

Conversely, the Government has given written summaries of expert opinions it intends to offer at trial pursuant to Fed. R. Crim. P. 16 (a)(1)(G). See Letter of Assistant United States Attorney K. Nathaniel Yeager, August 1, 2018, attached as Exhibit 2; see also Letter of Assistant United States Attorney, K. Nathaniel Yeager, September 28, 2018 (Yeager Ltr. 9/28/18). The Government has also provided a summary of the statistical and quantitative analyses conducted by its proposed experts. See Exhibit 2. Even where the government has disclosed background experts, the United States has provided the Defendants with the substance of the proposed testimony as well as relevant exhibits. Id.

**LEGAL STANDARDS**

The Defendants "must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if--(i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies…" Fed. R. Crim. P. 16 (b)(1)(C). The "summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id.

At trial, irrelevant evidence is inadmissible. *See* Fed. R. Evid 402. Evidence is only relevant if it "has any tendency to make a fact more or less probable that it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence is inadmissible if its "probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." Fed. R. Evid. 403.

**ARGUMENT**

1. Rule 16**.**

Pursuant to Fed. R. Crim. P. 16 (b)(1)(C), the Defendants' summary of their expert testimony "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Likewise, Fed. R. Crim. P. 16 (a)(1)(G) uses identical language to describe the summaries that must be disclosed by the government. The rule, by its plain language, precludes trial by ambush for both parties. Rule 16(d)(2)(C) and (D) state that if a party fails to comply with Rule 16's disclosure requirements, "the court may . . . prohibit that party from introducing the undisclosed evidence; or . . . enter any other order that is just under the circumstances." A district court's decision to prohibit an expert from testifying as a sanction for

violating Rule 16 will be upheld unless it was an abuse of discretion. *See United States v. Banks*, 761 F.3d 1163, 1198 (10th Cir. 2014).

Defendants' disclosure of general topics of expert testimony, without more, fail to meet the requirements of Rule 16. As such, the testimony should be excluded.

2. Inadmissible Expert Opinion

The Defendants have disclosed two forms of inadmissible expert testimony, expert legal instruction and generic expert testimony regarding industry practices.

*Expert Legal Instruction is Not Admissible*

"It is black-letter law that it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *Nieves–Villanueva v. Soto–River*a, 133 F.3d 92, 99 (1st Cir. 1997) (internal quotation marks, brackets, and citation omitted). Accordingly, "'expert testimony offered solely to establish the meaning of a law is presumptively improper.'" *United States v. Mikutowicz*, 365 F.3d 65, 73 (1st Cir.2004) (quoting *United States v. Prigmore*, 243 F.3d 1, 18 n. 3 (1st Cir. 2001)); *see also United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (affirming exclusion of expert testimony because the expert "would have testified about the meaning of the statute and the regulations . . . a subject for the court, not testimonial experts."). That is true, "if the evidence at trial gives rise to a genuine and material dispute as to the reasonableness of a defendant's asserted understanding of applicable law." *Prigmore*, 243 F.3d at 18. Even under those circumstances, it is still the case that "the judge, and not the jury, must resolve the dispute." *Id.* No expert may testify regarding the objective reasonableness of a Defendant's beliefs about the law. *Prigmore*, 243 F.3d at 18 n.2 ("[A]s a legal question, the reasonableness of Defendants' understanding is ultimately a question for the judge." (citing *Nieves-Villanueva,*133 F.3d at 99)); see also *Cheek v. United States*, 498 U.S. 192, 203 (1991)

(questioning objective reasonableness "transforms the inquiry into a legal one and would prevent the jury from considering it").

Defendants have disclosed that three experts, Jodi L. Avergun, Larry P. Cote, and Jesse M. Fried, will testify about requirements of different aspects of the law. The Defendants are free to file jury instructions. Moreover, the Defendants may also seek leave of the Court to either admit specific regulations or obtain judicial notice of regulations. The United States may join, or independently, make the same or similar requests.

Whether the Defendants violated the law is disputed by the parties. As such, it would be confusing to the jury, and certain to mislead them, if an expert for one of the parties takes the stand to explain the law. Once the jury forms an understanding about the law from an expert lawyer's testimony it will be difficult if not impossible for the Court to supplant it. There is simply no legal reason, let alone requirement, for the Court to permit an expert to testify about the law.

*Industry Standards are Irrelevant*

The Defendants proposed expert testimony also should be excluded as irrelevant unless and until, there is evidence that a particular Defendant knew about, or relied upon the advice of, a particular expert opinion. *See* Fed. R. Evid 401 and 402; *United States v. Adams*, 740 F.3d 40, 45 (1st Cir. 2014); *United States v. Denson*, 689 F.3d 21, 26 (1st Cir. 2012). The inadmissibility of such evidence does not change even when the purported view represents the collective views of industry lawyers about the law's requirements. Cf. *Newton v. Merrill, Lynch, Pierce, Fenner & Smith*, 135 F.3d 266, 274 (3d Cir. 1998) ("Even a universal industry practice may still be fraudulent." (citing *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1171-72 (2d Cir. 1970)).

In *United States ex rel. Kieff v. Wyeth*, No. 1:03-cv-12366-DPW (D. Mass.) and *United States ex rel. LaCorte v. Wyeth*, No. 1:06-cv-11724-DPW (D. Mass.), Judge Woodlock laid out a clear test of the relevance of so-called industry practice evidence: "[U]nless the party about whom evidence is offered is aware of and relies upon practice or commentary, then it is going to be excluded." Mot. Hr'g & Status Conf. Tr. 13:7-8 (*United States ex rel. Kieff v. Wyeth*, No. 1:03-cv-12366-DPW (D. Mass.) (Jan. 8, 2016); see also id. 13:14-15 (facts "just out there in the air in so far as this case is concerned" are not relevant). Judge Woodlock elaborated:

> [The] first thing you have got to show is [that the defendants] were relying on this, and in order to rely on it they had to know about it. Now, if there were some larger discussion about they knew it and they relied on it, then we would go to the next step, which has to do with reasonableness, I suppose, of that kind of reliance. The pharmaceutical industry could get together, they could say, 'Well, we are going to file amicus briefs in all of these cases. We do not really believe it, but we are going to file these amicus briefs in all these cases, because if we can just kind of gather the wagons we might be able to put off a discussion about what goes on when someone decides not to comply with the rules that a judge says are the rules.' But we have not even reached that point, because, as I understand the evidence in this case, Wyeth was unfamiliar with the views that were expressed here. They may have paralleled those views, but they were unfamiliar with them.

*Id.* at 15:9-25. The Court recognized that a person can raise a defense based on good faith disagreement with a regulation, but also worried that an industry can "flock together and say, 'We all believe this,' even if [the] poor [defendant] never heard it . . . . That it is out there that it might be reasonable does not make it evidence in this case." *Id.* at 14:2-12.[1]

---

[1] *Cf. United States v. Patwardhan*, No. ED CR 08-00172 VAP, 2009 WL 2190191 (C.D. Cal. July 18, 2009), *aff'd*, 422 F. App'x 614 (9th Cir. 2011). In *Patwarhan*, the defendant sought to establish his good faith as a defense to a charge he violated the FDCA by importing foreign label drugs using expert testimony about, among other things, FDA policy statements, confusion "among the general public" about the law and the rules, and the FDA's creation of pertinent policies. 2009 WL 2190191, at *1. The court initially denied the government motion to exclude, but, at trial, the court reversed course and excluded the proposed expert testimony specifically for lack of foundation: "there was no connection between the proffered testimony regarding general confusion of the public as to the FDA's importation policy of prescription drugs for personal use and the Defendant's acts of importing, or directing others to import, prescription drugs to distribute to his patients and not for personal use." *Id.* at *2.

In *United States v. Gaw*, 817 F.3d 1 (1st Cir. 2016), the First Circuit recently mirrored Judge Woodlock's approach, ruling that a defendant's good faith based on the existence of a state law and a state code of conduct could be a defense to mail fraud only if the defendant could show he knew about them in the relevant time period. *Gaw*, 817 F.3d at 10-11. The logic of *Gaw* is fully consistent with prior First Circuit cases. *See United States v. Urciuoli*, 613 F.3d 11, 15 (1st Cir. 2010) (defendant allowed to offer an ethics opinion in support of a good faith defense because he knew about it at the relevant time); *accord United States v. St. Pierre,* 599 F.3d 19, 23 (1st Cir. 2010) (affirming exclusion of "[e]vidence of accounting standards[] unknown to [the defendant]"); *United States v. Lussier*, 929 F.2d 25, 31 (1st Cir. 1991) (holding that evidence concerning Federal Register notice was properly excluded because the record lacked evidence that the defendant "knew of [it] and relied on it").

Other circuits also require a showing of knowledge and reliance before allowing expert testimony about the law or industry or agency practices in support of a good faith defense. For example, in *United States v. Giambalvo*, 810 F. 3d 1086 (8th Cir. 2016), a defendant sought to establish a good faith defense using testimony from an Internal Revenue Service ("IRS") employee about a book describing tax returns purportedly similar to those filed by the defendant. The district court excluded the testimony, explaining that there was no evidence that the IRS employee had "any knowledge about [the defendant], or his returns, other than there was a fax sent to the office where she works. Whether 10 people, or 50 people, or hundred people filed a similar return, it doesn't help or hurt this case." 810 F. 3d at 1094. The Eighth Circuit agreed, noting that the "test does not focus on the knowledge of the reasonable person, but rather on the knowledge of the defendant." *Id.* (quoting *United States v. Powell*, 955 F.2d 1206, 1211 (9th

Cir. 1992)). The court explained that the defendant was the "best source of his subjective beliefs," and conversely:

> [The IRS employee] could not have offered any testimony concerning [the defendant's] subjective belief because [the defendant] and [the IRS employee] had never spoken; in other words, [the IRS employee] had no knowledge of how [the book] impacted [the defendant]. Furthermore . . . the fact that other taxpayers may have filed returns similar to [the defendant's] is not evidence that [he] acted in good faith or that those taxpayers acted in good faith when they filed their returns. Nor does [the defendant] claim to have relied on certain other taxpayers' tax returns.

*Id*. at 1095. The clear principle here is that subjective good faith necessarily turns on what an individual actually knew and understood. *Cf. United States v. Harris*, 942 F.2d 1125, 1132 (7th Cir. 1991) (explaining that a "defendant may present evidence to the jury showing the basis for [an] allegedly good faith belief [including] expert testimony about case law, to the extent that the defendant claims actual reliance on that case law" and that "[c]ase law on which the defendant did not in fact rely is irrelevant because only the defendant's subjective belief is at issue.").

This case is about the Defendants' conduct, the law's requirements, and, with respect to the Defendants' purported good faith, their actual understandings of those requirements. It is not about the conduct or understandings of federal agency employees, lawyers, pharmacists, or other pharmaceutical manufacturers unknown to the Defendants that could not have formed the basis of their beliefs. Here, at least according to the Defendants' disclosure to the United States, none of the Defendants proposed experts will testify that they advised any of the Defendants. Put simply, there is currently no evidence linking the views of the Defendants' experts with the decisions of any of the Defendants. As such, none of the proposed testimony can be relevant to the Defendants state of mind.

At best, the Defendants propose that their experts point to other drug manufacturers or industry participants, which may have done the same thing that they did.  Judge Woodlock directly addressed this issue in *Wyeth*:

> You say, 'Well, we knew that TAP was getting away with it,' which is, 'They got away with it so we should get away with it,' an argument that does not have a lot of force generally, and we have got a couple of talking heads that will say, 'This is what the understanding was in the industry, and this is what someone whispered to me or maybe full voice said to me over the phone.'  No.

Mot. Hr'g & Status Conf. Tr. 17:1-9.  The proposed testimony speaks neither to the honesty of the Defendants' subjective beliefs nor to the legality of their conduct and should be excluded.

*Industry Standards Risk Confusing the Jury*

In addition to excluding proposed testimony of industry experts as irrelevant pursuant to Fed. R. Evid. 401 and 402, the proposed expert testimony should also be excluded pursuant to Rule 403 because it will confuse and mislead the jury.  Specifically, the proposed testimony threatens to confuse the jury by substituting facts that could have informed the Defendants' subjective beliefs for the facts that did inform the Defendants' subjective beliefs.  The only relevant question is what the Defendants, as individuals, knew and honestly believed.  Here, unless the Defendants provide foundational testimony that they did, in fact, actually know about, consider, and rely upon the respective industry practice at issue, the testimony cannot help the jury understand anything about what the Defendants did actually know about, consider, and rely upon. In effect, the Defendants will ask the jury to believe an industry standard that the Defendants did not consult, while keeping the jury in the dark about what really happened.

As such, the Court should exclude Defendants' proposed expert testimony under Rule 403 because it will confuse and mislead the jury.

## CONCLUSION

The Defendants' expert disclosures fail to comply with the requirements of Fed. R. Crim. P. 16 (b)(1)(C).  Further, the Defendants disclosures regarding expert legal instruction and industry practice are clearly not admissible at trial pursuant to Fed. R. Evid. 401, 402, and 403. For the foregoing reasons, the Court should exclude the Defendants' proposed expert witnesses.

|  |  |
|---|---|
|  | Respectfully submitted, <br> ANDREW E. LELLING <br> United States Attorney |
| Dated: December 5, 2018        By: | /s/ K. Nathaniel Yeager_____ <br> K. NATHANIEL YEAGER (BBO # 630992) <br> DAVID G. LAZARUS  (BBO #624907 ) <br> FRED WYSHAK, JR. (BBO #535940) <br> Assistant U.S. Attorneys <br> One Courthouse Way, Ste. 9200 <br> Boston, MA  02210 <br> (617) 748-3100 <br> david.lazarus2@usdoj.gov <br> nathaniel.yeager@usdoj.gov <br> fred.wyshak@usdoj.gov |

### Certificate of Compliance

I certify that I have conferred with opposing counsel and have attempted in good faith to resolve or narrow the issue.

/s/ *K. Nathaniel Yeager*_____
Assistant United States Attorney

Dated: December 5, 2018

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *K. Nathaniel Yeager*
Assistant U.S. Attorney

Dated: December 5, 2018